IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEEL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SUPERIOR RIGGING AND ERECTING COMPANY,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:22-CV-2848-TWT |

**OPINION AND ORDER**

This is a declaratory judgment action. It is before the Court on the Plaintiff's Joint Motion for Judgment on the Pleadings and to Compel Arbitration [Doc. 20]. For the reasons set forth below, the Plaintiff's Joint Motion [Doc. 20] is GRANTED.

## I.   Background

This case arises from a dispute related to the Savannah International Trade & Convention Center Expansion Project (the "Project"). (Compl. ¶ 1; Countercl. ¶ 2). The Plaintiff, Steel, LLC, alleges that it entered into a contract with the Defendant, Superior Rigging and Erecting Co. ("Superior"), in which Superior agreed to provide certain structural steel erection services for the Project. (Compl. ¶ 1). Steel claims that the parties reached an agreement regarding Superior's work on the Project on June 22, 2021, and that the final

contract included a clause requiring arbitration in the event of a dispute.[1] (*Id.* ¶¶ 15, 17). Superior denies Steel's claim that any final agreement was reached, such that it could be bound to arbitrate the present dispute. (Ans. ¶ 15; Countercl. ¶ 36; Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 2). Steel now moves for judgment on the pleadings and to compel arbitration as to its declaratory judgment claim.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be

---

[1] Steel refers to different versions of the governing contract as both the Master Subcontract Agreement and the final Erector Agreement. (*Compare* Compl. ¶ 10 (citing Ex. B), *with id.* ¶¶ 22–25 (citing Ex. A)). The Court refers to the final contract, as accepted by Superior on June 22, as the "Subcontract."

able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion for judgment on the pleadings, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott*, 405 F.3d at 1253.

The Federal Arbitration Act (the "FAA") "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Courts apply state contract law to questions regarding the validity, revocability, and enforceability of arbitration agreements. *Caley*, 428 F.3d at 1368. When an arbitration agreement clears both prongs of the FAA test, a court must either stay or dismiss the lawsuit and compel arbitration. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

### III. Discussion

Steel moves for judgment on the pleadings and to compel arbitration as to its claim for a declaratory judgment, which seeks a declaration that Steel and Superior have a binding contract that requires Superior to arbitrate the present dispute. (Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to

Compel Arb., at 1–3; Compl. ¶ 58). Specifically, Steel argues that it and Superior reached a meeting of the minds in agreeing to the terms of the Subcontract and that they expressly agreed to arbitrate all disputes arising from the Project. (Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 1–2). In response, Superior argues that it never assented to any specific contract terms with Steel for the Project and that, absent a binding contract, the parties are not bound to arbitrate the present dispute. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 2). The Court first considers the parties' arguments as to the existence of a contract and then turns to the arbitration provision.

### A. Existence of a Contract

In support of its position that the parties entered into a binding contract, Steel argues that Superior (1) affirmed the existence of the Subcontract when it submitted payment applications on the Project, (2) expressly assented to the terms and conditions of the Subcontract, and (3) ultimately received payment for its work under the Subcontract. (Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 5–6). Superior disputes Steel's contentions, arguing in response that the parties never signed the Subcontract and that the parties were still negotiating the purported Subcontract on which Steel relies. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 10–11). Superior also argues that its request and receipt of payment for the preliminary work it performed on the Project do not

4

presuppose the existence of a contract. (*Id.* at 13).

"Under Georgia law, a written, unsigned contract can be enforceable if the parties mutually assent to its terms." *Aaron v. United Health Servs. of Ga., Inc.*, 349 Ga. App. 563, 565 (2019).

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

*Id.* (citation omitted). Absent a signed agreement, a party's assent may also be indicated "by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other." *Comvest, L.L.C. v. Corp. Sec. Grp., Inc.*, 234 Ga. App. 277, 280 (1998).

Construing the Complaint's allegations, the parties' communications, and the contractual attachments to those communications collectively and in the light most favorable to Superior, the Court nonetheless concludes that the parties mutually assented to the terms of the Subcontract. To begin with, Superior accepted Steel's offer "unequivocally and without variance" in its email response to Steel on June 22, 2021. *Bennett v. Novas*, 364 Ga. App. 364, 366 (2022); (Compl. ¶ 15, Ex. F, at 398 ("The attached document as [Steel]

5

provided on [May 24, 2021] and re-attached is accepted by [Superior].")). Such language objectively shows that the parties had a meeting of the minds in agreeing to the terms of the Subcontract. In response, Superior argues that "both parties anticipated being bound only upon execution of a written agreement." (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 10 (citing Compl., Ex. J, at 431 ("Please review, sign and return an executed copy to our office. Once executed by [Steel], a fully executed copy will be sent to you for your records."))). But the Court does not find that the lack of signatures "negat[es] the existence of a contract between the parties," as Superior contends. (*Id.*). Rather, Superior's June 22 email objectively and unequivocally manifested assent to the Subcontract as revised by Steel and without any condition of subsequent signatures by the parties. Such assent is sufficient to bind Superior to the Subcontract as drafted on June 22. *See Aaron*, 349 Ga. App. at 565.

Steel also argues that an exchange of emails between it and Superior on June 25, 2021, bind Superior to the terms of the Subcontract. (Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 10–11). Steel claims that the only changes to the Subcontract between the "marked-up version" sent on May 24 (and accepted by Superior on June 22) and the "revised Word version" sent on June 25 were the additions of "the project information and the agreed-upon contract sum." (Reply Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 4–5 n.2 (quoting Compl. ¶¶ 15, 18)).

Superior argues that Steel attempts to "create contract obligations for Superior simply by writing in an email that it thought Superior accepted specific contract terms." (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 12). But Superior *did* in fact unequivocally accept— in its June 22 email to Steel—the specific contract terms of which it now seeks to avoid enforcement. (Compl. ¶ 15). Superior also argues that its June 25 email stating that "[t]his aligns with our discussion and reviews," in response to Steel's June 25 email, does not amount to unambiguous assent. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 12; Compl., Ex. H, at 424). Even if Superior's June 25 email did not amount to unequivocal assent, the Court finds that Superior's prior assent in its June 22 email was sufficient to bind the parties. Except for the project information and the agreed-upon Subcontract sum (neither of which does Superior appear to dispute), the essential terms of the Subcontract did not change between the May 24 "marked-up version" and the June 25 "revised Word version." Thus, the Subcontract as drafted on June 25 is binding on the parties.

In addition to Superior's express assent to the contract, its conduct and communications thereafter affirm its intent to reach an agreement with Steel. Notably, Superior performed work under the Subcontract and then requested and received payment for that work between July 2021 and February 2022. (Compl. ¶¶ 30, 33). Such conduct indicates Superior's assent "by the acceptance

7

of benefits under the [Sub]contract" and also indicates "the acceptance by [Steel] of the performance by [Superior]." *Comvest*, 234 Ga. App. at 280. Indeed, the only factor indicative of a lack of assent at present is the fact that the Subcontract is unsigned, which does not itself preclude the finding of an enforceable contract. *Aaron*, 349 Ga. App. at 565.

Another factor indicative of Steel and Superior's mutual assent is the Subcontract's "Acceptance" clause, which provides as follows:

> In the event that [Superior] is given a notice to proceed, directed to purchase material, or otherwise directed by [Steel] to commence any of the Work contemplated by this Subcontract prior to [Superior] signing this Subcontract, [Superior] upon commencement of such work shall be deemed to have accepted all of the Terms and Conditions of this Subcontract as set forth herein.

(Compl. ¶ 26 (quoting Ex. A)). The pleadings show that Superior commenced work on the Project through its submission of various payment applications for Superior's mobilization work and for work by Superior's erection engineering subcontractor. (Compl. ¶¶ 27–30). This commencement constituted acceptance by partial performance pursuant to the express terms of the Subcontract's Acceptance clause. *See Classic Restorations, Inc. v. Bean*, 155 Ga. App. 694, 699 (1980) ("Assent and acceptance may be indicated by the act of beginning performance."). Superior's acceptance by beginning performance negates its contention that it merely performed preliminary work on the Project without ever intending to be bound by the terms of the Subcontract. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 13–15).

8

Superior offers several counterarguments in support of its position that the parties never reached an enforceable agreement. First, Superior argues that the Project's general contractor, Clark Construction Group ("Clark"), required that all contracts between Steel and its subcontractors be in writing. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 10–11). The Court agrees with Steel that it has complied with this requirement considering that the Subcontract is in writing. (Reply Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 3–4).

Second, Superior argues that the Subcontract was still subject to negotiation because certain attachments to the Subcontract contain an "In Process" watermark. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 11). Steel replies that the parties had finalized their negotiations, as evidenced by Superior's unequivocal acceptance via email on June 22, 2021. (Reply Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 4). Superior does not cite to any case law within this section of its response brief in support of its argument on this point. (*See* Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 11). The Court finds that even if the setting of deadlines for the Project was "in process" after the parties mutually assented to the Subcontract, such pending deadlines do not preclude the formation of a binding contract on the essential terms. *See Newman v. Newman*, 291 Ga. 635, 636 (2012) ("Deferral of agreement on a nonessential term does not invalidate an

9

otherwise valid contract."). Thus, the Court finds this argument fails.[2]

Next, Superior argues that the Subcontract misstates Superior's obligations on the Project, confusing them with Steel's obligations to provide the structural steel work on the Project, as opposed to Superior's obligations to provide crane and rigging services. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 11–12). The Subcontract provision that Superior references, however, appears to be an exhibit to the contract between Clark and Steel (referred to as the "Steel Fabricator Agreement" in the Subcontract), which appropriately sets forth Steel's obligations to Clark. (*See* Compl., at 19, 103, 264).[3]

Superior then argues that it could not possibly have assented to the Subcontract because the Subcontract incorporated by reference a contract that Superior claims it did not see until February 2022—the underlying "Prime Contract" between Clark and the Georgia State Financing and Investment

---

[2] On a similar point, Superior outlines, in its counterclaims and its response brief, how the Subcontract as drafted on June 25 differs from Superior's original and updated proposals to Steel for the scope of its work on the Project. (Countercl. ¶¶ 26–29; Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 4). Such changes, even if true, however, do not change the fact that Superior unequivocally assented to the terms of the Subcontract in its June 22 email to Steel. Thus, the Court also finds this argument unpersuasive.

[3] Superior also argues here that the Subcontract refers to an "Exhibit 1" that is not attached to the Subcontract. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 12). Even if the Subcontract is missing the referenced exhibit, Superior offers no authority establishing that such an absence would bar the existence of a binding contract. Accordingly, the Court finds this argument unpersuasive.

Commission ("GSFIC"), which financed the Project.[4] (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 12). In reply, Steel refutes Superior's contention, attaching as an exhibit to its reply brief an email thread from August 2021 between Steel and Superior, where Superior requested, and Steel provided, a copy of the Prime Contract. (Reply Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 6).

Even if Superior did not see the Prime Contract until February 2022 as it alleges, a sophisticated corporate entity like Superior can certainly accept terms within a contract (the Subcontract) that reference another contract (the Prime Contract) without actually reviewing the referenced contract. *See Wright v. Safari Club Int'l, Inc.*, 322 Ga. App. 486, 493 (2013) ("[P]arties to a contract are presumed to have read their provisions *and to have understood the contents*. One who can read, must read, for he is bound by his contracts." (emphasis added) (citation omitted)). Superior was also free to reject the terms of the Subcontract until Steel provided it with a copy of the Prime Contract; however, Superior declined to do so here and is therefore bound by the terms

---

[4] The parties appear to use the term "Prime Contract" to reference two distinct contracts related to the Project: (1) the contract between the GSFIC and Clark; and (2) the contract between Clark and Steel. (*Compare* Compl. Ex. A, at 19 (defining Prime Contract, within the Subcontract, as the agreement between GSFIC and Clark), *with id.*, Ex. R., at 471 (referring to the Prime Contract, within Superior's letter containing contract comments, as the agreement between Clark and Steel). Because Superior objects specifically to the lack of receipt of the contract between the GSFIC and Clark, and because the Subcontract clearly defines that contract as being the Prime Contract, the Court considers that contract to be the operative one for Superior's argument.

of the Prime Contract through its unequivocal assent to the Subcontract.[5]

Finally, Superior argues that the payment applications on which Steel relies are "consistent with the absence of a binding written agreement." (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 15). Specifically, Superior takes issue with the fact that the payment applications do not clearly define which "Contract Documents" govern the payment applications. (*Id.* at 14). Superior also references the blank spaces next to the words "Contract Date" and "Contract for" in the payment applications themselves and argues that the place for a reference to the Subcontract would have been in those blank spaces. (*Id.* at 15; *see also, e.g.*, Compl., at 442, 446). The missing definition, date, and specifications in the payment applications do not, however, preclude the Court's finding of a binding contract; Superior's express assent to the Subcontract here was sufficient.

In sum, the allegations of the Complaint require a finding of mutual assent to the Subcontract between the parties, as a matter of law. Thus, the Court concludes that the Subcontract is binding on Steel and Superior.[6]

---

[5] The Court notes that the only comment regarding the Prime Contract that Superior had in its March 2022 letter to Steel was not an objection, but rather a request for clarity as to the intent of one provision of the Prime Contract. (Compl., Ex. R, at 467 (referencing the contract at issue between GSFIC and Clark)). Thus, the Court finds this asserted ground for the absence of Superior's assent to the Subcontract unpersuasive.

[6] The Court also notes that its finding of an enforceable contract at present does not appear to prejudice Superior because when it sought to alter terms of the Subcontract, ultimately leading to the present dispute, it indicated that it would prefer to arbitrate disputes before the arbitration entity where

### B. Arbitration

Having found that Steel and Superior mutually assented to the terms of the Subcontract, the Court considers whether the Subcontract requires the parties to arbitrate the present dispute. Steel argues that the following provision of the Subcontract requires arbitration: "[Superior] agrees that any and all claims or disputes arising out of or related to this Subcontract, solely involving [Steel], shall be subject to mediation which shall be a condition precedent to arbitration. All claims not resolved in mediation shall be subject to arbitration." (Br. in Supp. of Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 12–13 (quoting Compl. ¶ 2, Ex. A)). Superior concedes that the Subcontract's provision requires arbitration of the present dispute. (Def.'s Resp. Br. in Opp'n to Pl.'s Joint Mot. for J. on the Pleadings and to Compel Arb., at 16 n.4). Accordingly, the Court concludes that the Subcontract requires arbitration of the present dispute as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Joint Motion for Judgment on the Pleadings and to Compel Arbitration [Doc. 20] is GRANTED. Having found that Steel is entitled to judgment on the pleadings regarding its claim for a declaratory judgment, Superior's counterclaims for a declaratory judgment and for quantum meruit necessarily fail and are therefore dismissed. The Clerk

---

Steel initially brought its claim. (Compl. ¶¶ 38, 46 (citing Ex. R, at 470, and Ex. S, at 474)).

is DIRECTED to enter judgment in favor of the Plaintiff on Count I of the Complaint [Doc. 1] and on Counts I and II of the Defendant's Counterclaims [Doc. 13], and to close the case.

    SO ORDERED, this ___29th___ day of December, 2022.

                                              THOMAS W. THRASH, JR.
                                              United States District Judge